1

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION


UNITED STATES OF AMERICA

    vs.                              CASE NO:   2:05cr216-MEF

TIMOTHY WILLIAMS,

    Defendant.


\* \* \* \* \* \* \* \* \* \* \*

CHANGE OF PLEA HEARING

\* \* \* \* \* \* \* \* \* \* \*

BEFORE THE HONORABLE SUSAN RUSS WALKER, UNITED STATES MAGISTRATE JUDGE, at Montgomery, Alabama, on Wednesday, May 31, 2006, commencing at 3:58 p.m.

APPEARANCES:

FOR THE GOVERNMENT:    Ms. Susan R. Redmond
                          Assistant United States Attorney
                          OFFICE OF THE UNITED STATES ATTORNEY
                          One Court Square, Suite 201
                          Montgomery, Alabama   36104

FOR THE DEFENDANT:     Ms. Christine A. Freeman
                          Executive Director
                          FEDERAL DEFENDERS
                          MIDDLE DISTRICT OF ALABAMA
                          201 Monroe Street, Suite 407
                          Montgomery, Alabama   36104

Proceedings reported stenographically;
transcript produced by computer.

RISA L. ENTREKIN, RDR, CRR, Official Court Reporter
U.S. District Court, Middle District of Alabama  334.240.2405

Attachment A

```
 1        (The following proceedings were heard before the Honorable
 2         Susan Russ Walker, United States Magistrate Judge, at
 3         Montgomery, Alabama, on Wednesday, May 31, 2006, commencing
 4         at 3:58 p.m.:)
 5     (Call to Order of the Court)
 6         THE COURT:  This is United States versus Timothy
 7  Williams, 2:05cr216.  We are here for a change of plea.
 8         Mr. Williams, go ahead and stand, if you would.
 9         Previously, the Court was informed that the defendant
10  wishes to change his plea and consents to having the guilty plea
11  proceedings conducted by a United States magistrate judge.  I am
12  a United States magistrate judge.  The next higher ranking judge
13  is a district judge, and you have a right to have a district
14  judge take your plea.  If you wish to have me take your plea
15  today, you need to read and sign the consent form that's been
16  provided to you.
17     (The defendant and Ms. Freeman comply)
18         MS. FREEMAN:  Your Honor, Mr. Williams has signed a
19  consent form.
20         THE COURT:  Okay.  Would counsel briefly summarize the
21  terms of the plea agreement, please?
22         MS. REDMOND:  Would you prefer I do?
23         Judge, this is a plea agreement entered into by the
24  parties pursuant to Rule 11(c)(1)(A) of the Federal Rules of
25  Criminal Procedure.  In this agreement, the government's
```

United States of America v. Timothy Williams    2:05cr216-MEF    5/31/2006

3 (Pages 3 to 6)

Page 3

provisions are as follows, that the -- we will agree to recommend that two levels, pursuant to acceptance of responsibility, in terms of a downward departure, be given to the defendant and a third point to be motioned for by the government, should the defendant continue to timely notify authorities of his intention to enter a plea of guilty, to accept responsibility, and to not obstruct justice or otherwise fail to accept responsibility.

Further, the government agrees that pursuant to United States Sentencing Guideline 5K1.1 and Title 18, Section 3553(e), that should the government find that the defendant has provided substantial assistance to the -- substantial assistance to the government, it will agree to recommend a downward departure of at least three levels at sentencing. Said determination is at the discretion of the United States.

Further, after sentencing, should the defendant continue to provide cooperation not contemplated by this agreement, the government may file a further reduction pursuant to federal rule of criminal -- rules of procedure 35. And if the government makes the determination to file such downward departure, it will at that time also make the determination as to whether or not that downward departure motion can and will affect the Title 18, Section 924(c) charge, which I believe is count two of the indictment.

And further, we agree to recommend that the defendant

Page 4

receive a sentence at the low end of the applicable advisory guideline range, as determined by the Court at sentencing. We agree to dismiss count three of the indictment.

The defendant agrees to plead guilty to counts one and two of the indictment, to cooperate with the government, as set out in the cooperation agreement contained in the body of the plea agreement, to forfeit to the United States all firearms and ammunitions described in count two of the indictment and as set out in the forfeiture allegation of the indictment.

Further, the defendant agrees that the sentencing guidelines and recommendations -- to be bound by the advisory sentencing guidelines and recommendations determined by the sentencing court at sentencing. The defendant waives appeal and collateral attack, including upward departure, and waives the right to attack conviction and sentence in any postconviction proceeding. And I believe those are the salient terms of the agreement.

THE COURT: Anything else, Ms. Freeman?

MS. FREEMAN: No, Your Honor. We agree that those terms are all reflected in this agreement.

THE COURT: All right. Let's swear in the defendant.

THE CLERK: If you would raise your right hand.

(The defendant is sworn)

THE COURT: Mr. Williams, do you understand that you are now under oath and that if you answer any of the questions

Page 5

asked here falsely, your answers may later be used against you in another prosecution for perjury or making a false statement?

THE DEFENDANT: Yes.

THE COURT: Would you state your name, please.

THE DEFENDANT: Timothy Williams.

THE COURT: How old are you?

THE DEFENDANT: 39.

THE COURT: How far did you go in school?

THE DEFENDANT: Twelfth.

THE COURT: Have you been treated recently for any mental illness or addiction to narcotic drugs of any kind?

THE DEFENDANT: No, ma'am.

THE COURT: Are you currently under the influence of any drug, medication, or alcoholic beverage of any kind?

THE DEFENDANT: No, ma'am.

THE COURT: Have you received a copy of the indictment pending against you; that is, the written charges made against you in this case?

THE DEFENDANT: Yes.

THE COURT: Have you fully discussed those charges and the case in general with Ms. Freeman and -- is it Ms. Hart, also?

MS. FREEMAN: Yes, Your Honor. Ms. Hart is his primary attorney. I'm standing in for her today.

THE COURT: Okay. With Ms. Freeman and Ms. Hart, as

Page 6

your counsel?

THE DEFENDANT: Yes.

THE COURT: Are you fully satisfied with the counsel, representation, and advice given to you in this case by your attorneys, Ms. Freeman and Ms. Hart?

THE DEFENDANT: Yes.

THE COURT: There is a written plea agreement in this case. Did you have the opportunity to read and discuss the plea agreement with your lawyers before you signed it?

THE DEFENDANT: Yes.

THE COURT: Does the plea agreement represent in its entirety any understanding that you have with the government? In other words, is all of your agreement written down in that written plea agreement?

THE DEFENDANT: Yes.

THE COURT: Do you understand the terms of the plea agreement?

THE DEFENDANT: Yes, ma'am.

THE COURT: Has anyone made any other or different promise or assurance of any kind to you in an effort to induce you to plead guilty in this case?

THE DEFENDANT: No, ma'am.

THE COURT: Do you understand that if the court chooses not to follow the terms of the plea agreement, the judge will give you the opportunity to withdraw your plea of guilty; and

RISA L. ENTREKIN, RDR, CRR, Official Court Reporter
U.S. District Court, Middle District of Alabama  334.240.2405

United States of America v. Timothy Williams     2:05cr216-MEF     5/31/2006

4 (Pages 7 to 10)

**7**

1  that if you choose not to withdraw your plea, he may impose a
2  more severe sentence without being bound by the plea agreement?
3       THE DEFENDANT: Yes, ma'am.
4       THE COURT: Has anyone attempted in any way to force
5  you to plead guilty in this case?
6       THE DEFENDANT: No, ma'am.
7       THE COURT: Are you pleading guilty of your own free
8  will because you are guilty?
9       THE DEFENDANT: Yes, ma'am.
10      THE COURT: Do you understand that the offenses to
11 which you are pleading guilty are felony offenses; that if your
12 plea is accepted, you will be adjudged guilty of those offenses;
13 and that such adjudication may deprive you of valuable civil
14 rights, such as the right to vote, the right to hold public
15 office, the right to serve on a jury, and the right to possess
16 any kind of firearm?
17      THE DEFENDANT: Yes, ma'am.
18      THE COURT: The maximum penalty provided by law for
19 counts one and two is as follows. For count one, no more than
20 $250,000 fine, no more than five years' imprisonment, or both
21 the fine and the imprisonment, no less than two years'
22 supervised release, a $100 assessment fee, and you may be asked
23 to make restitution to any victim of the offense. For count
24 two, the maximum punishment is no more than $250,000 fine, no
25 less than five years' imprisonment, or both the fine and the

**8**

1  imprisonment, no probation, a $100 assessment fee. And again,
2  you may be asked to make restitution to any victim of the
3  offense.
4       And my note here says consecutive to any other
5  sentence.
6       MS. REDMOND: That is correct. The 924 will run
7  consecutive to any other sentence in the case.
8       THE COURT: All right. Do you understand the limits of
9  punishment in this case?
10      THE DEFENDANT: Yes, ma'am.
11      THE COURT: With regard to supervised release, do you
12 understand that if you violate the conditions of supervised
13 release, you can be given additional time in prison?
14      THE DEFENDANT: Yes, ma'am.
15      THE COURT: Do you understand that you must pay a
16 special assessment fee of $100 for each count?
17      THE DEFENDANT: Yes, ma'am.
18      THE COURT: And do you understand that you must forfeit
19 pursuant to the terms of the forfeiture agreement in this case?
20      THE DEFENDANT: Oh, yes, ma'am.
21      THE COURT: I should have said forfeit the weapons. Do
22 you understand that?
23      THE DEFENDANT: Yes, ma'am.
24      THE COURT: Do you understand that under the Sentencing
25 Reform Act of 1984, the United States Sentencing Commission has

**9**

1  issued guidelines for judges to follow in determining the
2  sentence in a criminal case?
3       THE DEFENDANT: Yes, ma'am.
4       THE COURT: And do you understand that under recent
5  Supreme Court decisions, those guidelines are now considered to
6  be advisory guidelines?
7       THE DEFENDANT: Yes, ma'am.
8       THE COURT: Have you and your attorney talked about how
9  the advisory sentencing guidelines might apply to your case?
10      THE DEFENDANT: Yes, ma'am.
11      THE COURT: And do you understand that in your plea
12 agreement, you've agreed to be bound by the advisory sentencing
13 guidelines?
14      THE DEFENDANT: Yes, ma'am.
15      THE COURT: Do you understand that parole has been
16 abolished and that if you are sentenced to prison, you will not
17 be released on parole?
18      THE DEFENDANT: Yes, ma'am.
19      THE COURT: Do you understand that under some
20 circumstances, you or the government may have the right to
21 appeal any sentence that the court imposes?
22      THE DEFENDANT: Yes.
23      THE COURT: And do you understand that by entering into
24 this plea agreement and entering a plea of guilty, you will have
25 waived, or given up, your right to appeal or to collaterally

**10**

1  attack all or part of this sentence, except as provided in the
2  plea agreement?
3       THE DEFENDANT: Yes.
4       THE COURT: Do you understand that you have the right
5  to plead not guilty to any offense charged against you and to
6  persist in that plea; that you would then have the right to a
7  trial by jury; that at trial, you would be presumed to be
8  innocent and the government would have to prove your guilt
9  beyond a reasonable doubt?
10      THE DEFENDANT: Yes, ma'am.
11      THE COURT: Do you understand that you would have the
12 right to the assistance of counsel for your defense, the right
13 to see and hear all the witnesses and have them cross-examined
14 in your defense --
15      THE DEFENDANT: Yes, ma'am.
16      THE COURT: -- the right on your own part to decline to
17 testify unless you voluntarily elected to do so in your own
18 defense, and the right to the issuance of subpoenas or
19 compulsory process to compel the attendance of witnesses to
20 testify in your defense?
21      THE DEFENDANT: Yes, ma'am.
22      THE COURT: Do you understand that should you decide
23 not to testify or put on any evidence, these facts cannot be
24 used against you?
25      THE DEFENDANT: Yes, ma'am.

**11**

1  THE COURT: Do you further understand that by entering
2  a plea of guilty, if that plea is accepted by the district
3  judge, there will be no trial and you will have waived, or given
4  up, your right to a trial as well as those other rights
5  associated with a trial, as I just described them?
6  THE DEFENDANT: Yes, ma'am.
7  THE COURT: The charges to which you are pleading
8  guilty are set out in counts one and two of the indictment.
9  Count one charges that on or about June 13th, 2005, in
10  Montgomery, Alabama, in the Middle District of Alabama, that you
11  knowingly and intentionally possessed with intent to distribute
12  marijuana, a Schedule I controlled substance, in violation of 21
13  U.S.C., Section 841(a)(1). And count two charges that on or
14  about June 13th, 2005, in Montgomery, Alabama, in the Middle
15  District, that you knowingly used and carried during and in
16  relation to and did knowingly possess in furtherance of a drug
17  trafficking crime, as set forth in count one, a firearm --
18  specifically, a Ruger, Model P89, nine-millimeter pistol with
19  the serial number as set out in the indictment, a Rossi .38
20  caliber revolver with the serial number set out in the
21  indictment, a Strum Ruger .223 caliber rifle with the serial
22  number set out in the indictment, and a Norinco, Model SKS, with
23  alternate serial numbers set out in the indictment -- in
24  violation of 18 U.S.C., Section 924(c)(1)(A). Do you understand
25  that those are the two charges you're pleading guilty to today?

**12**

1  THE DEFENDANT: Yes, ma'am.
2  THE COURT: The elements of these offenses which the
3  government would have to prove in your case beyond a reasonable
4  doubt are, with regard to the 21 U.S.C., Section 841(a) offense
5  first, that you knowingly and intentionally possessed a
6  controlled substance -- that is, marijuana; second, that you
7  possessed the controlled substance with the intent to distribute
8  it. And the elements of the 924(c) offense are, first, that you
9  committed a drug trafficking offense; second, that that offense
10  may be prosecuted in a court of the United States; third, that
11  you, in furtherance of the offense, possessed a firearm; and
12  fourth, that you did so knowingly and willfully. Do you
13  understand those elements?
14  THE DEFENDANT: Yes, ma'am.
15  THE COURT: I need to find whether or not there is a
16  factual basis for the plea. How would you like to proceed?
17  MS. FREEMAN: Your Honor, may I ask questions of
18  Mr. Williams?
19  THE COURT: Yes. Thank you.
20  MS. FREEMAN: Mr. Williams, on June 13th, 2005, were
21  you in Montgomery County?
22  THE DEFENDANT: Yes.
23  MS. FREEMAN: And on that date, did you possess a
24  quantity of marijuana?
25  THE DEFENDANT: Yes.

**13**

1  MS. FREEMAN: And did you -- were you aware that you
2  possessed that quantity of marijuana?
3  THE DEFENDANT: Yes.
4  MS. FREEMAN: And did you possess that marijuana with
5  the intent to distribute it?
6  THE DEFENDANT: Yes.
7  MS. FREEMAN: Did you also at the same time and in the
8  same place on that day, June 13th, 2005, possess the four
9  firearms that are named in the indictment?
10  THE DEFENDANT: Yes.
11  MS. FREEMAN: And do you agree with me that information
12  provided to us by the government, to which we will stipulate,
13  would establish that -- excuse me. Your Honor, I believe I've
14  laid a factual basis.
15  THE COURT: All right. Is there any disagreement that
16  this drug trafficking --
17  MS. FREEMAN: One other question. Did you possess
18  those firearms in furtherance of your intent to possess and
19  distribute marijuana?
20  THE DEFENDANT: Yes.
21  THE COURT: Is there any disagreement that this offense
22  may be prosecuted in a court of the United States; that is, the
23  possession of controlled substance?
24  MS. FREEMAN: No, Your Honor.
25  THE COURT: Since that is an element. Any further

**14**

1  questions from the government?
2  MS. REDMOND: Judge, the only question the government
3  would have is whether the defense will stipulate that Montgomery
4  County, Alabama, is within the Middle District of Alabama.
5  MS. FREEMAN: We would stipulate to that, Your Honor.
6  THE COURT: How do you now plead to the charges against
7  you in counts one and two of the indictment, guilty or not
8  guilty?
9  THE DEFENDANT: Guilty.
10  THE COURT: It is the finding of the Court in the case
11  of United States versus Timothy Williams that the defendant is
12  fully competent and capable of entering an informed plea, that
13  the defendant is aware of the nature of the charges and the
14  consequences of the plea, and that the plea of guilty is a
15  knowing and voluntary plea supported by an independent basis in
16  fact containing each of the essential elements of the offense.
17  The plea is therefore accepted, and the defendant is now
18  adjudged guilty of those offenses.
19  A written presentence report will be prepared by the
20  probation office to assist the court in sentencing. You'll be
21  asked to give information for the report, and your attorney may
22  be present for that if you wish. The court will permit you and
23  your counsel to read the presentence report and file any
24  objections to it before the sentencing hearing, and you and your
25  counsel will have the opportunity to speak on your behalf at the

United States of America v. Timothy Williams    2:05cr216-MEF    5/31/2006

6 (Pages 15 to 18)

---

**15**

1  sentencing hearing. The date for your sentencing will be set by
2  order.
3      And this is a case in which there is a presumption of
4  detention. Let me just ask the government. I've --
5      MS. FREEMAN: Your Honor, I actually believe that the
6  presumption does not apply to this case.
7      THE COURT: All right. Let -- I need to ask that.
8  I've got two draft detention release orders pending sentencing,
9  one from yesterday in which the box indicating that this was an
10 offense for which the maximum sentence was life imprisonment or
11 death was checked. And that's not correct, right?
12     MS. REDMOND: That is --
13     THE COURT: That is correct?
14     MS. REDMOND: Excuse me, Judge. I believe so.
15     THE COURT: All right. And the second one tells me the
16 maximum term of imprisonment is ten years or more, and it's
17 checked at a different point. I need to know which of these is
18 correct, first of all.
19     MS. REDMOND: I think it's the first one, Judge. And
20 let me be clear. 924(c) is not less than five years, and I
21 believe it's a term up to life.
22     THE COURT: Okay. So you think on this form -- is this
23 a form that you prepared or the probation officer prepared?
24     PROBATION OFFICER: The pretrial office prepared it.
25     THE COURT: Okay. Well, I've got two different ones.

**16**

1  But would you agree on behalf of Pretrial that B should be
2  checked, then?
3      PROBATION OFFICER: I agree with her that it's up to
4  life, the one that's up to life.
5      THE COURT: And what does the defendant say?
6      MS. FREEMAN: Your Honor, we would disagree in that the
7  plea agreement also requires a sentence at the low end. The low
8  end of 924(c) is five years. And that's what he will receive on
9  the 924(c)(1) unless there's a violation of the plea agreement
10 or it's withdrawn. As to count one, the maximum punishment is
11 five years, as stated in the plea agreement.
12     THE COURT: I think the issue is not what the agreement
13 is to, but what is the maximum term prescribed in the Controlled
14 Substances Act. So it appears to me that this is one in
15 which -- this is a plea of guilty to an offense for which the
16 maximum sentence is life imprisonment or death. Is death an
17 option in this case?
18     MS. REDMOND: I don't believe so.
19     MS. FREEMAN: Your Honor --
20     THE COURT: That needs to be marked out, surely,
21 although I do understand that he -- that the plea agreement
22 specifies a term shorter. So I'll accept that first of all, the
23 correct finding is that pursuant to the Crime Control Act of
24 1990, defendant has entered a plea of guilty to an offense for
25 which the maximum sentence is life imprisonment.

**17**

1      Now, is there disagreement over whether there is a
2  presumption; that is, whether I would have to find exceptional
3  reasons why his detention would not be appropriate? Let me
4  start with the government. What does the government say in this
5  case?
6      MS. REDMOND: Judge, looking at the provisions of 3143
7  of Title 18, release or detention of a defendant pending
8  sentence or appeal, unless you find that there is a substantial
9  likelihood that a motion for acquittal or new trial will be
10 granted, you then have to look to the government. And the
11 government has to recommend that no sentence of imprisonment be
12 imposed on the person and that you have to find by clear and
13 convincing evidence that the person is not likely to flee or
14 pose a danger to any other person or the community.
15     The government affirms that it is not going to
16 recommend that no sentence of imprisonment be imposed on
17 Mr. Williams. Therefore, pursuant to 3143, I think you are
18 mandated to order him into the custody of the marshals.
19     MS. FREEMAN: Your Honor, I would disagree with that
20 interpretation of 3145(c), which also applies. Under 3145(c),
21 where a person is subject to detention pursuant to 3143(a)(2),
22 which I believe is what we're going on here, and if that person
23 meets the conditions of release set forth in 3143(a)(1) or
24 (b)(1), which relate to not likely to flee or pose a danger to
25 the safety of a person or the community, then that person may be

**18**

1  ordered released under appropriate conditions by the judicial
2  officer if it is clearly shown that there are exceptional
3  reasons why detention would not be appropriate. There are
4  exceptional reasons present in this case.
5      THE COURT: All right. Let me make sure I understand
6  what the disagreement is. The government does not even believe
7  I can find exceptional reasons, or you do?
8      MS. REDMOND: That is correct. I don't think you get
9  to that point under 3143.
10     THE COURT: All right. Let me look at that first. And
11 that's 3143(a)(2) that you're talking about?
12     MS. REDMOND: Yes, ma'am.
13     THE COURT: Okay. So I guess the first thing I've got
14 to determine is whether he has been found guilty of an offense
15 in a case described in subparagraph (A), (B), or (C) of
16 subsection (f)(1) of 3142, so let me turn to that. Okay. Is
17 this a crime of violence?
18     MS. FREEMAN: No, it is not, Your Honor.
19     THE COURT: Or it's (B) that we --
20     MS. REDMOND: No, ma'am. It's going to come under
21 (1) -- excuse me -- (f)(1)(B).
22     THE COURT: (B). Okay.
23     MS. REDMOND: And Judge, if I might, if the Court will
24 recall, the defendant was previously detained upon motion of the
25 government and finding by the Court. The government then, as

---

RISA L. ENTREKIN, RDR, CRR, Official Court Reporter
U.S. District Court, Middle District of Alabama  334.240.2405

### 19

1  part of his cooperation agreement, asked that he be released for
2  the purposes of serving or meeting the terms of his cooperation
3  agreement. He has met the terms of that cooperation agreement.
4  And there is no need, per the government, for him to further
5  remain out, which is why we are not asking that he remain out.
6        THE COURT: Okay. And I may get to argument on that
7  question in just a minute.
8        Ms. Freeman, I'll hear you. Let me just finish reading
9  this so I know what I'm --
10       MS. FREEMAN: May I speak with Ms. Redmond while
11 you're --
12       THE COURT: You certainly may.
13       (Brief pause)
14       THE COURT: All right. I've reviewed the statute, and
15 it does appear to me that this is governed by 3143(a),
16 subsection (2). And that section does provide under (A)(ii)
17 that an attorney for the government does have to recommend that
18 no sentence of imprisonment be imposed on the person unless I
19 find a substantial likelihood that a motion for acquittal or for
20 a new trial would be granted --
21       MS. FREEMAN: Your Honor --
22       THE COURT: -- for the defendant to be released. You
23 can respond.
24       MS. FREEMAN: Thank you. 3145(c) clearly applies, and
25 that does not require a motion by the government. And it

### 20

1  specifically addresses a person subject to detention under
2  3143(a)(2) or (b)(2) who meets --
3        THE COURT: All right. Hold on just a minute. I'm
4  sorry. You're talking about 3145(c)?
5        MS. FREEMAN: Yes, Your Honor. I would also state --
6        THE COURT: Let me read this one, Ms. Freeman, and then
7  I'll hear from you.
8        MS. FREEMAN: Yes.
9        THE COURT: Yes. The government -- there does appear
10 to be some contradiction here. This refers to 3143(a)(2) or
11 (b)(2) and suggests that that individual may be ordered released
12 under appropriate conditions if there are exceptional reasons,
13 which is somewhat inconsistent with 3143(a)(2). Can you explain
14 the inconsistency?
15       MS. REDMOND: And I believe I've actually taken this
16 issue up before the district court, Judge. Reading 3145(c), an
17 appeal from a release or detention order or from a decision
18 denying revocation or amendment of such an order is governed by
19 the provisions of Section 1291, Title 28, and Section 3731 of
20 this title.
21       THE COURT: I think you can skip to the sentence
22 beginning, A person subject to detention.
23       MS. REDMOND: To detention, pursuant to 3143(a)(2),
24 which I think we are all in agreement applies in this case, and
25 who meets the conditions of release set forth in Section

### 21

1  3143(a)(1) or (b)(1), may be ordered released. And if I look at
2  3143 --
3        THE COURT: I'm looking at (a)(1). And that is the
4  substantial likelihood that a motion for acquittal or new trial
5  will be granted. And we --
6        MS. REDMOND: The Court needs to make a determination
7  as to whether or not the Court finds that that is a likelihood.
8        THE COURT: I don't find that to be a likelihood, given
9  the plea of guilty.
10       MS. FREEMAN: Your Honor, you're not looking at the
11 appropriate sentence. 3143(a)(1) is not 3143(a)(2)(A)(i).
12       THE COURT: Okay.
13       MS. FREEMAN: 3143(a)(1) simply refers to findings by
14 clear and convincing evidence that a person is not likely to
15 flee or pose a danger to the safety of any other person or the
16 community.
17       THE COURT: Okay. Stop for just a second. Let me do
18 this again.
19       So what you're saying is 3143(a)(1) is that sentence
20 fragment that says except as provided in paragraph (2)?
21       MS. FREEMAN: Yes, Your Honor.
22       THE COURT: That's where it begins.
23       MS. FREEMAN: The substantial likelihood section is
24 under 3143(a)(2).
25       THE COURT: Yes. I see what you're saying.

### 22

1        MS. FREEMAN: And Your Honor, I have case law
2  supporting my interpretation of these statutes.
3        THE COURT: It may be that I'm going to have to go look
4  at the cases.
5        You have some, too, right? Is that what you want to
6  tell me, Ms. Redmond?
7        MS. REDMOND: No, Judge. I think I just wanted to make
8  a quick argument. In reading 3143(a)(1) -- and I think what's
9  applicable -- and I don't disagree with Ms. Freeman -- that if
10 we do not recommend a term of imprisonment, that person should
11 be detained unless the Court finds by clear and convincing
12 evidence that the person is not likely to flee or pose a danger
13 to the safety of any other person or the community if released
14 under Section 3142(b) or (c).
15       And I think the argument the government has is that
16 924(c) is a crime of violence, and the defendant has just pled
17 guilty to it, possession of firearms during the commission of a
18 drug trafficking offense. Perhaps the Court is aware -- I am
19 unaware of any conditions -- and perhaps Probation can speak to
20 it, if it knows -- that the Court can mandate in this case which
21 would protect the community and prevent the defendant from
22 acting in a manner inconsistent with the crime to which he has
23 pled guilty.
24       MS. FREEMAN: Your Honor, 924(c) is not a crime of
25 violence. In addition, Mr. Williams has been on release without

**23**

1  any violations. He has been cooperating with the government,
2  including up to today meeting with an agent of law enforcement.
3  He has met with agents of three different law enforcement
4  agencies, both state and federal, and he has appeared here in
5  court on his own yesterday and today, knowing that this
6  controversy existed.
7       THE COURT: How long has he been released?
8       MS. FREEMAN: Your Honor, I apologize. I do not know
9  that. I know that this case --
10      THE COURT: Well, approximately. And was he released
11 to the custody of an officer or just on his own?
12      MS. FREEMAN: He is on his own now and under
13 supervision of pretrial release. And we were appointed in this
14 case on September 19th, 2005. But I don't know at what point he
15 was not detained.
16      MS. REDMOND: And if you will give me just a minute --
17      THE COURT: I will.
18      MS. REDMOND: -- I should have that. Judge, we filed
19 on December 5th, 2005, a motion to release the defendant into
20 the custody of the United States -- excuse me -- from the United
21 States Marshal Service to officers with United States Secret
22 Service. And then on January 11th, 2006, the Court granted the
23 motion to -- and I believe it's approximately January 11th --
24 ordered that the defendant be released per request of the --
25 excuse me -- of the government. And Judge --

**24**

1       THE COURT: And then he did not remain in the custody
2  of the Secret Service officer?
3       MS. REDMOND: That is correct.
4       THE COURT: Okay.
5       MS. REDMOND: He went to supervision of probation or
6  pretrial services, Jason --
7       THE COURT: And how did that occur?
8       MS. REDMOND: Pardon me?
9       THE COURT: I'm sorry. How did that occur?
10      MS. REDMOND: Upon our request.
11      THE COURT: Okay. So there was yet another bond
12 hearing of some kind?
13      MS. REDMOND: Yes, ma'am. And I was trying to find it,
14 and I know it occurs sometime after January.
15      THE COURT: All right. Let me do a couple of things.
16 I'll go ahead and ask Probation, since they're here, is there a
17 recommendation with regard to whether he be held or not. And
18 then we'll go back to this sort of legal maze of how the
19 statutes fit together.
20      PROBATION OFFICER: Your Honor, I do not have a
21 recommendation, because I have not supervised him. It is my
22 understanding, too, that is a crime of violence, carrying a
23 firearm in furtherance of a drug trafficking offense. But I
24 believe that in the report Jason Dillon gave you -- and he has
25 supervised him -- that he said that he has generally complied

**25**

1  with supervision. But because it was an automatic remand, he
2  went along with that. I believe that was the way he worded it.
3       THE COURT: That's right. The recommendation is that
4  he be remanded to the custody of the marshal unless exceptional
5  circumstances are given by the AUSA or defense counsel. So
6  everybody seems to be confused about how these statutes apply.
7       Let me go back to that just for a moment. Does the
8  government still contend that I cannot find exceptional reasons,
9  that that's not an option under these circumstances?
10      MS. REDMOND: Judge, the position that the government
11 takes is that the Court should be bound by 3142. I don't
12 disagree that 3143 -- I'm sorry. The Court should be bound by
13 3143. I don't have a means and I don't disagree that 3145(c)
14 puts everything into question. And quite honestly, I am not
15 sure how to interpret that in relation to 3143, because it seems
16 to mandate.
17      THE COURT: All right. It is confusing. I'm sure
18 there is some case law on this.
19      Ms. Freeman, did you have a cite for me?
20      MS. FREEMAN: Yes, I do, Your Honor, thanks to Robin
21 Konrad, who's present in the courtroom. There are two
22 citations, and one of those citations contains citations from
23 numerous appellate courts. The reported case is United States
24 versus Fred Mitchell at 358 F. Supp. 2d 707. That's a district
25 court case from Wisconsin, an opinion in February of '05 that is

**26**

1  addressing exactly this question. An unreported case from the
2  Sixth Circuit, Your Honor, also addresses this question and
3  lists numerous appellate courts that have talked about
4  exceptional circumstances.
5       THE COURT: What is the cite for that?
6       MS. FREEMAN: It is 2002 WL1869446. It's U.S. versus
7  Cook, a Sixth Circuit opinion. And on the first page of the
8  slip opinion, Your Honor, in a section beginning, Although the
9  mention of exceptional circumstances appears at the close of a
10 section otherwise devoted to review and appeal, we are not
11 convinced --
12      THE COURT: Slow down just a little bit.
13      MS. FREEMAN: I'm just talking about where to find
14 that.
15      THE COURT: I know. But I just don't want the court
16 reporter to self-destruct.
17      MS. FREEMAN: Okay. At a portion of that opinion on
18 the first page beginning at, Although the mention of exceptional
19 circumstances appears at the close of a section otherwise
20 devoted to review and appeal, we are not convinced that it is
21 meant to be an instruction limited to the courts of appeal. It
22 goes on to say most courts considering the issue have concluded
23 that a district court is empowered to make findings regarding
24 exceptional circumstances, and it gives citations from the
25 Eighth, Tenth, Seventh, Second, and Fifth Circuits, as well as

## Page 27

1  district court in the Sixth Circuit.
2       THE COURT: I'm not sure I disagree that a district
3  court can make exceptional circumstances findings. The question
4  is whether I can under the circumstances of this provision in
5  3143.
6       MS. FREEMAN: One last case, Your Honor.
7       THE COURT: Yes.
8       MS. FREEMAN: And that is a reported Ninth Circuit
9  case, United States versus Garcia, at 340 F.3d 1013, and that's
10 discussing what types of facts would constitute exceptional
11 circumstances. One of the facts that the Court may consider,
12 according to this case, is whether or not the defendant was
13 unusually cooperative with the government. It is not suggested
14 that that's something the government has to request or make
15 known. But if the Court finds that there was unusual
16 cooperation, the Court may consider that fact alone an
17 exceptional circumstance which, if there is no danger that the
18 defendant would flee or pose a danger to the community, would
19 justify release.
20      THE COURT: All right. I'll hear whatever argument
21 that either or both of you have about exceptional circumstances,
22 and then I'm going to have to actually take a recess to decide.
23 You've already made your argument?
24      MS. FREEMAN: Well, no, I have a couple of other
25 points.

## Page 28

1       THE COURT: All right. Go ahead.
2       MS. FREEMAN: Mr. Williams is a resident of Montgomery
3  County. He owns a home here. That information was presented
4  when he was first arrested and I believe is in the pretrial
5  services report. He's paying a mortgage of approximately $900
6  per month on a home in Carriage Hills. He has two grown
7  children who live in New York, but he has lived with his
8  fiancee, who is present in the courtroom today, at that address
9  and her two young children. They've been together for
10 approximately three years. He has two jobs. Not only has he
11 been employed as an assistant manager at Trendz, which is the
12 restaurant or club that is where American Pie used to be, he
13 also is involved in promoting music concerts and rock concerts
14 in Montgomery. He also has a father and a brother living in
15 Montgomery. He provides some support to them; but also,
16 obviously, that's family connection to the community.
17      THE COURT: And what is exceptional about his
18 cooperation?
19      MS. FREEMAN: Your Honor, he cooperated with the Secret
20 Service Office, ATF, the Montgomery Police Department, and with
21 DEA. He wore a wire for, I believe, Secret Service. He has met
22 with the DEA agent on at least three occasions, including
23 today. He's provided information to all of those police
24 agencies.
25      THE COURT: Anything from the government?

## Page 29

1       MS. REDMOND: I think the Court is aware -- and if it
2  is not aware of his criminal history, the government certainly
3  has that information to provide.
4       As to the defendant's argument that he is -- that his
5  cooperation is unusual, the government would like the
6  opportunity to provide information to the Court; however,
7  because of the nature of the information, I would request that
8  that information provided to the Court not be -- that a record
9  not be made of that information or that it be provided, if a
10 record is to be made, ex parte.
11      THE COURT: Ex parte, not just in camera?
12      MS. REDMOND: In camera would be fine, Judge.
13      THE COURT: All right. I can do that. Would you
14 rather submit it in a written form that's sealed or open only to
15 the defendant, or would you rather do it orally?
16      MS. REDMOND: Judge, taking into consideration the
17 cases presented here today by the defense and the government's
18 not having an opportunity to provide that information, I would
19 respectfully request that we be allowed not only to provide that
20 information in written form, but also to write a further
21 response to the 3145 issue and place that before the Court and
22 make a record of that.
23      THE COURT: I mean it is a significant issue. And if I
24 make a ruling on it, I am likely to have to at least write to
25 the question or in some way make a ruling on that that I

## Page 30

1  understand is a significant one for both parties.
2       What the status of the defendant would be, that he
3  would continue to be released until that's concluded. So if I
4  do continue this, which is I think what we're looking at, I
5  don't want to do it for too long. But that would be what
6  would -- I would simply leave the status quo where it is and
7  tell the marshal I'm sorry that they were here today, because it
8  doesn't appear there's going to be a resolution. Let me excuse
9  them.
10      The plea is concluded. That part is done. And I'll
11 revisit this release issue. You'll remain on release until I
12 resolve it, because that's your present circumstances.
13      And let me ask how long do y'all want?
14      MS. REDMOND: Judge, if I can have until -- I have two
15 other matters that are required. If I can have until Friday to
16 submit in written form our response and to provide in written
17 form our response to the defendant's representations as to
18 unusual cooperation.
19      THE COURT: All right. I'm going to give both of you
20 until Friday. In other words, I'm not going to sequence this so
21 that one responds to the other. But if the defendant wishes to
22 submit anything further in addition to these cases, you can have
23 until -- do you want close of business, or can we wind this up
24 maybe at lunchtime?
25      MS. FREEMAN: Your Honor, I would really appreciate if

```
                                    31
1    we had until close of business on Friday. I'm covering pretrial
2    conferences.
3         THE COURT: Well, in that case, it doesn't have to be
4    close of business; because obviously, I'm not going to read it
5    that late. So we'll just make it Friday whenever.
6         MS. REDMOND: Yes, Your Honor.
7         THE COURT: And perhaps we can ruin part of your
8    weekend. The deadline for any further briefing or argument or
9    submission in writing on this question will be Friday. And
10   early next week, I'll make a decision about release or not,
11   pending sentencing.
12        MS. FREEMAN: Thank you, Your Honor.
13        THE COURT: Thank you very much.
14        THE CLERK: Court is recessed.
15   (Proceedings concluded at 4:41 p.m.)
16              * * * * * * * * * *
17        COURT REPORTER'S CERTIFICATE
18   I certify that the foregoing is a correct transcript
19   from the record of proceedings in the above-entitled matter.
20        This 14th day of June, 2006.
21
22              /s/ Risa L. Entrekin
                Registered Diplomate Reporter
23              Certified Realtime Reporter
                Official Court Reporter
24
25
```